UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

DANNY MARTINEZ,

                                Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.

------------------------------------------------------------

17 Civ. 10253 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiff Danny Martinez brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying Martinez's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") for the period between January 1, 2016 and December 31, 2016. On July 24, 2018, the Commissioner moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. 16. On January 11, 2019, Martinez cross-moved for judgment on the pleadings. Dkt. 29. Before the Court is the February 5, 2019 Report and Recommendation of the Honorable Henry B. Pitman, United States Magistrate Judge, recommending that the Court grant the Commissioner's motion and deny Martinez's motion. Dkt. 31. On March 4, 2019, Martinez filed several objections to the Report. Dkt. 36.

For the reasons that follow, the Court respectfully declines to adopt the Report. Instead, the Court denies the Commissioner's motion, grants Martinez's motion, and remands the case to the Commissioner for reconsideration in light of new evidence.

## I. Background[1]

Martinez, who was 41 years old at the time of the administrative law judge's ("ALJ") decision, worked as a general helper in a factory warehouse from 1995 until he was laid off from that position on December 31, 2011. A.R. 26. Martinez stated in his June 15, 2016 "Disability Report" that the position required him to stand and occasionally lift boxes weighing up to 50 pounds. In February 2016, Martinez worked for a few months in construction, but claims to have been let go because he suffered depression and frequent panic attacks.

On June 1 and June 15, 2016, Martinez filed applications for DIB and SSI, respectively. He alleges that he became disabled on January 1, 2016, due to anxiety, depression, panic attacks, insomnia, and paranoia. On August 2, 2016, Martinez's application for benefits was denied. He then requested, and was granted, a hearing before an ALJ. On March 21, 2017, Martinez and his attorney appeared before ALJ Kimberly L. Schiro for a hearing at which Martinez testified. On May 19, 2017, the ALJ issued her decision concluding that Martinez did not qualify for the benefits he sought.

Employing the five-step sequential evaluation process set out in 20 C.F.R. § 404.1520(a)(4),[2] the ALJ first found that Martinez had not engaged in substantial gainful activity since January 1, 2016. A.R. at 27.

---

[1] The Court's summary of the facts is drawn from the Report's detailed account of the facts, to which neither party objects. Where necessary, the Court also cites to the certified Administrative Record. Dkt. 11 ("A.R.").

[2] The Second Circuit has defined the five-step sequential evaluation process as follows:

> The first step of this process requires the Secretary [of Health and Human Services] to determine whether the claimant is presently employed. If the claimant is not employed, the Secretary then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the Secretary next considers whether the claimant has an impairment

2

At step two, the ALJ concluded that Martinez suffered from the severe impairments of mood and anxiety disorders. *Id.*

At step three, the ALJ concluded that Martinez's impairments did not meet or medically equal the criteria of the listed impairments and, therefore, Martinez was not entitled to a presumption of disability. *Id.* at 18–20.

The ALJ determined that Martinez's impairments did not result in at least one extreme or two marked limitations in a broad area of functioning including: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing himself. *Id.* at 18. The ALJ further determined that Martinez retained the mental residual functional capacity to perform simple, routine tasks, at all exertion levels, with the following limitations:

> [Martinez] is able to have occasional contact with co-workers and supervisors, but no direct work-related contact with the public. He is able to work around others, but not on teams or in collaboration with others. He is able to make simple decisions and adapt to occasional changes in essential work tasks.

*Id.* at 20. In reaching this determination, the ALJ examined the opinions of Martinez's treating and consultative physicians and other sources and assessed the weight to be given to each based on the objective medical evidence.

---

that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the Secretary will find the claimant disabled. However, if the claimant does not have a listed impairment, the Secretary must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the Secretary determines whether the claimant is capable of performing any other work.

*Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citing 20 C.F.R. § 404.1520(a)(4)).

As discussed in further detail below, the record before the ALJ included Martinez's treatment notes from the New York Psychotherapy and Counseling Center ("NYPCC) for the month of June 2016. However, the record before the ALJ did not include NYPCC's treatment records from after that period, *id.* at 22, despite repeated requests from the ALJ for such records. These treatment records have since been made available and are attached as an exhibit to Martinez's memorandum in support of his motion for judgment on the pleadings. *See* Dkt. 30-1 ("NYPCC Treatment Records").

The ALJ afforded little weight to the January 2017 opinion of Dr. Noor Kazi, a treating psychiatrist at NYPCC, that Martinez (1) had marked difficulties in social functioning, understanding, and carrying out simple instruction, and (2) would be absent from work three times per month. The ALJ reasoned that these determinations were inconsistent with other record evidence and unsupported by treatment records. The ALJ afforded some weight to the July 2016 opinion of Dr. Seth Sebold, also a psychiatrist, that Martinez had a "good prognosis" and "unlimited ability to follow and understand simple directions and instructions, perform simple tasks independently and with supervision maintain a regular schedule." *Id.* at 23. The ALJ noted that this opinion was consistent with Martinez's self-reporting that he was capable of carrying out basic daily activities, such as dressing himself, bathing, and taking public transportation. However, the ALJ afforded little weight to Dr. Sebold's opinion that Martinez had "a markedly limited ability to deal appropriately with stress" and that Martinez's reported symptoms "significantly interfere" with his "ability to function on a daily basis," because this opinion was "inconsistent with the evidence of record." *Id.* at 24. The ALJ further considered Martinez's testimony and found that while his medically determinable impairments could reasonably have caused his reported symptoms, a review of the case record showed that

4

Martinez's statements regarding the intensity, persistence, and limiting effects of his symptoms were "not supported by the medical and other evidence in the record." *Id.* at 25–26.

Proceeding to step four of the sequential analysis, the ALJ concluded that Martinez was unable to perform his previous work as a general helper in a factory. At step five, relying on the interrogatory of a vocational expert, the ALJ concluded that jobs existed in significant numbers in the national economy that Martinez could perform given his residual functional capacity, age, and education. On that basis, the ALJ determined that Martinez was not disabled and therefore was not eligible for the benefits he sought. On November 3, 2017, that decision became the final decision of the Commissioner when the Appeals Council denied plaintiffs' request for review.

On December 28, 2017, Martinez commenced this action, Dkt. 2 ("Compl."), and requested to proceed in forma pauperis, Dkt. 1. On January 23, 2018, Chief Judge Colleen McMahon granted Martinez's request to proceed in forma pauperis. Dkt. 4. On January 24, 2018, the action was assigned to this Court. On January 26, 2018, the Court referred this case to Judge Pitman for a Report. Dkt. 6. On July 24, 2018, the Commissioner moved for judgment on the pleadings. Dkt. 16. On January 11, 2019, Martinez cross-moved for judgment on the pleadings. Dkt. 29.

On February 5, 2019, Judge Pitman issued the Report and recommended that the Commissioner's motion be granted and that Martinez's motion be denied. Dkt. 31. On March 4, 2019, Martinez filed objections to the Report. Dkt. 36.

## II. Standard of Review

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). To accept those portions of the Report to which no timely objection has

5

been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (quotation omitted); *see also Wilds v. United Parcel Serv.*, 262 F. Supp. 2d 153, 169 (S.D.N.Y. 2003). To the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report and Recommendation for clear error. *See Kozlowski v. Hulihan*, Nos. 09 Civ. 7583, 10 Civ. 812 (RJH) (GWG), 2012 WL 383667, at *3 (S.D.N.Y. Feb. 7, 2012). However, where specific objections are made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).

This Court's review of an appeal of a denial of disability benefits is limited to two inquiries. First, the Court must determine whether the Commissioner applied the correct legal principles in reaching a decision. 42 U.S.C. § 405(g). Second, the Court must decide whether the Commissioner's decision is supported by substantial evidence in the record. *Id.* "Substantial evidence is more than a mere scintilla. It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 447–48 (2d Cir. 2012) (internal quotation marks and citations omitted). "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise.*'" *Id.* (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)).

Because a Social Security ALJ has an affirmative duty to develop the record, *see Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009); 20 C.F.R. § 416.912(b), before reviewing the record evidence, a reviewing court "must first be satisfied that the ALJ provided plaintiff with a full

6

hearing under the Secretary's regulations and also fully and completely developed the administrative record," *Scott v. Astrue*, No. 09 Civ. 3999 (KAM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010).

### III. Discussion

Martinez raises several objections to the Report. He argues that the ALJ (1) did not satisfy her obligation to develop the record; (2) misapplied the "treating physician rule"; (3) improperly concluded that Martinez's mental health disability does not meet the listing requirements; and (4) made an improper residual functional capacity determination. He further argues that remand is necessary to consider the NYPCC treatment records for the period after June 2016, which were obtained after the ALJ issued her decision.

The Court finds it necessary to address only Martinez's first objection, and holds, with Martinez, that remand to the Commissioner for reconsideration is necessary in light of new evidence.

#### 1. Development of the Record

Martinez argues that the ALJ did not satisfy her obligation to adequately develop the administrative record. The ALJ has an "affirmative obligation to develop the administrative record," even if the claimant is represented by counsel. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). To discharge this affirmative duty, the ALJ must make "every reasonable effort" to assist the claimant to develop a complete medical history, including medical reports from the claimant's treating sources. 20 C.F.R. § 404.1512(b)(1). Typically, the ALJ makes a reasonable effort if she "make[s] an initial request for evidence from [the claimant's] medical source or entity that maintains [the claimant's] medical source's evidence . . . ." *Id.* § 404.1512(b)(1)(i). If the evidence has not been received between "10 and 20 calendar days after the initial request,"

7

the ALJ should "make one follow-up request to obtain the medical evidence necessary to make a determination." *Id.* As the Report recognizes, however, the ALJ's duty to develop the record is "enhanced" where, as here, the claimant alleges that he or she suffers from a mental impairment. *Corporan v. Comm'r of Soc. Sec.*, 12 Civ. 6704 (JPO), 2015 WL 321832, at *4 (S.D.N.Y. Jan. 23, 2015).

Martinez contends that the ALJ did not satisfy her enhanced duty to develop the record because, although the ALJ issued four pre-hearing requests and a subpoena to treating source NYPCC for medical records after June 2016, she did not make any effort to enforce that subpoena. The Report rejected this argument, concluding that requiring ALJs to issue or to enforce subpoenas would limit "their discretion in deciding how they develop the administrative record and would cause unreasonable financial burdens in processing disability claims." Report at 32. The Report further concludes that the absence of records from NYPCC is harmless error because "there does not appear to be anything in these treatment records that would contradict the ALJ's mental RFC finding." *Id.* at 33.

Martinez objects, arguing that because the ALJ relied on the absence of treatment records to discount the opinion of Dr. Kazi—a NYPCC psychiatrist—the ALJ was obligated to make more substantial efforts to obtain compliance with the subpoena for NYPCC's records. Martinez principally relies on *Marinez v. Commissioner of Social Security*, 269 F. Supp. 3d 207, 216 (S.D.N.Y. 2017), in which the ALJ also rejected a treating physician's opinion because it was unsupported by any treatment records. The ALJ in *Marinez* issued a subpoena for the physician's treatment notes covering the months before the physician articulated his opinion. However, the ALJ did not attempt to enforce the subpoena, and, as a result, the treatment notes there—as here—were not before the ALJ when he rendered his decision. *Id.* at 213. The

8

*Marinez* court explained that because the missing documents were "so critical to the ALJ's decision" to discount the treating doctor's opinion, the ALJ was required to make one additional follow-up request to obtain the underlying treatment records at issue. *Id.* at 218.

The Court agrees that *Marinez* is on point, and that, under the circumstances of this case, the ALJ was obligated to take some further action to develop this aspect of the record. Here, the ALJ discounted Dr. Kazi's January 2017 opinion that Martinez suffered marked social limitations. That opinion, in the ALJ's view, was "inconsistent with the evidence of record . . . ." A.R. 23. The ALJ emphasized the lack of treatment notes in the administrative record. *Id.* In other words, the ALJ discounted Dr. Kazi's determination as unsupported by the record while lacking the medical records—from the six months preceding Dr. Kazi's report—from the very medical center at which Dr. Kazi worked. To be sure, the ALJ made multiple attempts to obtain the relevant NYPCC records, including issuing a subpoena for those records. But there was no post-subpoena follow-up. The Court holds that, as in *Marinez*, because the missing records were "so critical to the ALJ's decision" to afford little weight to the opinion of a treating physician, the ALJ was required to "make at least one additional follow-up request to fulfill h[er] duty to develop the record." 269 F. Supp. 3d at 218.

Ordinarily, this error would require remand to allow the ALJ an opportunity to take additional steps to complete the record. *See id.* However, as noted, the treatment records that were the subject of the ALJ's subpoena have since been made available and have been produced in the course of this litigation. *See* Dkt. 30-1. Accordingly, the Court must address the question whether the ALJ's error was harmless, *i.e.*, whether the ALJ would have reached the same outcome had she obtained and considered the treatment records. *See Seltzer v. Comm'r of Soc. Sec.*, 07 Civ. 235 (CBA), 2007 WL 4561120, at *10 (E.D.N.Y. Dec. 18, 2007) ("[T]o the extent

9

that an ALJ fails in her duty to develop the record . . ., the court can still affirm her decision if this error is deemed to be harmless."); *Molina v. Barnhart*, No. 04 Civ. 3201, 2005 WL 2035959, at *8 (S.D.N.Y. Aug. 17, 2005) (concluding that the ALJ improperly failed to develop the record and concluding this error was not harmless, such that remand was required). Remand is unnecessary "where application of the correct legal standard could lead to only one conclusion." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (internal alterations omitted).

The Report concludes, after reviewing the NYPCC records, that the records would not have changed the ALJ's ultimate disability determination. As the Report observes, the NYPCC records between June 2016 and December 2016 reflect that Martinez missed three psychiatric appointments scheduled for July 11, July 18, and July 25, 2016. *See* NYPCC Treatment Records at 5–10. The records also reflect that a therapist attempted to contact Martinez, apparently unsuccessfully, on August 2, 2016. *Id.* at 7. On December 1, 2016, Martinez contacted NYPCC to resume treatment, *id.* at 8, and appeared for appointments with Dr. Kazi and another medical professional on December 16 and December 23, 2016. Notes from these appointments reflect that Martinez reported: "continuo[u]s panic attacks and heart palpitations since he was younger," *id.* at 10; "depressive mood," *id.*; that Martinez had been let go from his construction job due to "frequent panic attacks while working," *id.* at 10; that Martinez had been taking multiple prescription medications "for about 6 months now with no noted changes," *id.*; that he "felt ok" when attending a public ceremony with his family but "felt more comfortable once he was sitting in his seat," *id.* at 11; and that, during the therapy sessions, Martinez was "engaged however displayed limited eye contact," *id.* at 11.

Pointing to the treatment gap between June and December 2016, the Report concludes that nothing in the NYPCC records "would contradict the ALJ's mental [residual functional

capacity] finding"; as a result, the Report concludes, any error by the ALJ in failing to pursue the records more energetically was harmless. Report at 34.

This is one reasonable interpretation of the record. But it is not the only one. The Court cannot agree that the newly produced NYPCC records support "only one conclusion," *Zabala*, 595 F.3d at 409, such that remand to the ALJ could not yield a different result. It is, for example, conceivable that, had the ALJ the opportunity to review all the NYPCC records, she might have concluded that Martinez's failure to attend three scheduled therapy sessions in July 2016 was relevant to Martinez's claim to be unable to maintain a regular schedule and to be apt to miss work due to psychiatric symptoms. Conceivably, too, the ALJ could have concluded, based on Martinez's repeated absences from therapy, that the NYPCC records supported Dr. Kazi's January 14, 2017 opinion that Martinez suffers from an impairment that would likely cause him to miss work more than three times per month. A.R. 373–75. Conceivably, the ALJ may have given greater weight to Dr. Kazi's opinion, which in turn might have altered the ALJ's assessment of Martinez's residual functional capacity. Or, conceivably, the ALJ's assessment may have been unaffected. This Court cannot be certain. The Court therefore holds, with Martinez, that the ALJ's error with respect to the development of the record cannot be discounted, necessarily, as harmless.

Remand is appropriate here to enable the ALJ, who is closest to this controversy, to assess this new evidence. "The Social Security Act provides that a court may remand a case to the Secretary to consider additional evidence, 'but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991) (quoting 42 U.S.C. § 504(g)). Evidence is new if it is "not merely cumulative of what is

11

already in the record," and it is material if there is "a reasonable possibility that the new evidence would have influenced the Secretary to decide the claimant's application differently." *Id.* (quoting *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988). Such is the case here. The NYPCC records are not cumulative of other evidence. The records provide, at a minimum, new evidence of Martinez's treatment sessions after June 2016. Similarly, for the reasons stated above, the NYPCC records are material because there is a "reasonable possibility" that the evidence contained in those records could affect the ALJ's disability determination. For the avoidance of doubt, the Court emphasizes that the ALJ *could* reasonably reach that conclusion; the NYPCC records do not *compel* such a conclusion.

Finally, there is good cause to excuse Martinez's failure to incorporate the NYPCC treatment notes into the record before the ALJ: The record reflects that the parties and the ALJ made requests for the records, but NYPCC failed to produce them before the ALJ rendered her decision, and, as explained above, the ALJ was obligated to, but did not, take additional action to enforce the subpoena she issued for these potentially important records. *See Marinez*, 269 F. Supp. 3d at 216–18.

On remand, the Commissioner should consider this new evidence to the extent it relates to the period on or before the ALJ's decision. *See Shrack v. Astrue*, 608 F. Supp. 2d 297, 302 (D. Conn. 2009). The ALJ, of course, need not consider any evidence that is cumulative of evidence in the record as of the ALJ's earlier decision. *Id.*[3]

---

[3] Because the Court finds remand necessary on this ground, the Court need not address Martinez's remaining objections to the Report.

## CONCLUSION

For the reasons stated above, the Court grants Martinez's motion for judgment on the pleadings, Dkt. 29, denies the Commissioner's motion for judgment on the pleadings, Dkt. 16, and remands this case to the ALJ for further proceedings consistent with this ruling. The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 16 and 29 and close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: March 18, 2019
       New York, New York